Cornell WYLIE

v.

Donald VAUGHN, et al.

Civ. A. No. 90–7079.

United States District Court,
E.D. Pennsylvania.

Sept. 17, 1991.

---

Cornell Wylie, pro se.

## MEMORANDUM

NEWCOMER, District Judge.

This matter is before the Court on petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth in the opinion below, after review of the Magistrate's Report and Recommendation and the trial record of the proceedings in the Court of Common Pleas, the petition will be DENIED. The court will approve the Report and Recommendation in all respects, but will specifically address petitioner's equal protection challenge to the trial court's allowance of the prosecutor's use of peremptory challenges against venirepersons of petitioner's race.

*Facts:*

Petitioner is an African American. Before petitioner was tried, thirty-one venirepersons were empaneled for jury selection, four of whom were African American. The prosecution used its peremptory challenges to exclude two of the four African American venirepersons. The trial judge, consistent with *Batson,*[1] asked the prosecutor what his reasons were for excluding the African American jurors. (N.T. 7/24/86 pp. 10–12). The prosecutor stated that he struck one juror from the panel on the ground that she was from the area where the drug transaction occurred and knew someone who allegedly dealt drugs in that area; he struck the other because she was unemployed. (N.T. 7/24/86 p. 12). The sitting judge took personal notice of the fact that the prosecutor had "a prevailing practice" of striking unemployed jurors and persons from the general vicinity where the incident in question is alleged to have occurred. (N.T. 7/24/86 p. 12). The trial court accepted the prosecutor's explanation, finding that the reasons proffered were race-neutral and were not merely pretextual.

*Batson v. Kentucky:*

The Supreme Court, in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), set forth a three step process for evaluating an objection on equal protection grounds to peremptory challenges: (1) the defendant who claims denial of equal protection through the prosecutor's use of peremptory challenges to exclude members of his race from the venire panel carries the evidentiary burden. Once he establishes a prima facie case—i.e. minority defendant, exclusion of minority jurors of defendant's race, (2) it is up to the prosecutor to supply a race neutral reason for his peremptory strikes; (3) it is then up to the trial judge to determine whether the defendant carried his burden of proving purposeful discrimination. *Hernandez v. New York,* — U.S. —, —, 111 S.Ct. 1859, 1865, 114 L.Ed.2d 395, 405 (1991) *citing Batson,* 476 U.S. at 96–97, 106 S.Ct. at 1722–24.

---

**1.** *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

*Standard of Review:*

In reviewing a trial court's finding that a prosecutor's proffered reason for a peremptory strike against a minority juror is race-neutral, the appellate court must accord "great deference" to the trial court's finding. *Hernandez,* —— U.S. at ——, 111 S.Ct. at 1868–69, 114 L.Ed.2d at 408–409. *See also United States v. Clemons,* 843 F.2d 741, 745 (3d Cir.1988). The standard to be applied to such findings is the "clearly erroneous" standard. *See Id.* —— U.S. at ——, 111 S.Ct. at 1868–69, 114 L.Ed.2d at 408–409.

*Discussion:*

Because the prosecutor offered an explanation on the peremptory challenges and the trial court ruled on the ultimate question of intentional discrimination, the preliminary issue whether Wylie has made out a prima facie showing of discrimination is moot. *See Hernandez,* —— U.S. at ——, 111 S.Ct. at 1866, 114 L.Ed.2d at 405.

■ Further, the prosecutor's explanations for striking the jurors were "clear and specific," and were found to be race-neutral. A court evaluating the race-neutrality of a proffered explanation for striking a venireperson of defendant's race "must keep in mind the fundamental principle that 'official action will not be held unconstitutional solely because it results in a racially disproportionate impact....'" *Id.* at ——, 111 S.Ct. at 1866, 114 L.Ed.2d at 406. "Discriminatory purpose implies more than intent as awareness of consequences. It implies that the decisionmaker selected ... a particular course of action at least in part 'because of' ... its adverse impact upon an identifiable group." *Id.* at ——, 111 S.Ct. at 1866, 114 L.Ed.2d at 406 *quoting Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979). Here, while the prosecutor struck two African American venirepersons from the panel, two African Americans did in fact serve as jurors. Moreover, it is extremely unlikely that the prosecutor's exercise of his right of peremptory strike against the African American jurors was racially motivated as three of the principal witnesses for the prosecution were African American.

■ This court notes further, however, "that a trial court should give appropriate weight to the disparate impact of the prosecutor's criterion in determining whether the prosecutor acted with a forbidden intent, even though that factor is not conclusive in the preliminary race-neutrality inquiry." *Hernandez,* —— U.S. at ——, 111 S.Ct. at 1867, 114 L.Ed.2d at 407. Although it appears that the trial judge made a fair determination as to the reasons behind the use of the peremptory strike against the African American jurors, that a person is unemployed, is not a plausible reason for striking a venireperson. Moreover, while this court recognizes that a trial court need not determine whether the reasons proffered for a peremptory challenge rise to the level of a challenge for-cause, the trial court must also consider the impact that its decision will have on the opportunity for a minority defendant to be tried by a jury drawn from a cross section of the community. *See Batson, supra,* 476 U.S. 79, 106 S.Ct. 1712. Because there is a far greater percentage of unemployed minorities than there are unemployed persons in the general population, giving prosecutors carte blanche to strike jurors simply because they are unemployed creates a far smaller pool of potential minority jurors. Such a practice allows for discrimination which may result in a denial of equal protection to minority defendants. Although a prosecutor's intent can be difficult to prove, it can certainly be inferred. That a prosecutor systematically uses his peremptory strikes against unemployed persons can serve as subterfuge for discrimination against many urban minorities. Peremptory strikes on the basis of unemployment should therefore be considered suspect. Having reviewed the trial transcript from the Court of Common Pleas, however, this court is satisfied that, in this specific instance, the prosecutor's intent was not discriminatory. The trial judge took personal notice of the fact that the prosecutor had a practice of striking jurors on the ground that they were unemployed. Indeed, the prosecutor represented to the court that he

"always strike[s] unemployed people," (N.T. 7/24/86 p. 12) presumably regardless of race. Moreover, several of the witnesses for the prosecution were African American. In addition, two African Americans served as jurors. These facts are sufficient to preclude a finding that the trial court's denial of petitioner's *Batson* challenge was clearly erroneous. Accordingly, petitioner's motion for a Writ of Habeas Corpus will be denied.